IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-2870 |
| CURRY MURRAY WHITLOCK, LLC d/b/a Dimple's Restaurant & Lounge, et al., | * * | |
| Defendants. | | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff G & G Closed Circuit Events, LLC's ("G & G") Motion for Partial Summary Judgment (ECF No. 43). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motion in part and deny it in part.

## I.    BACKGROUND

**A.    Factual Background**

G & G brought this action against Defendants Curry Murray Whitlock, LLC d/b/a Dimple's Restaurant & Lounge and Janice Murray (collectively, "Defendants") alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. (Compl. at 1, 4–8, ECF No. 1).[1] Specifically, G & G alleges that Defendants unlawfully

---

[1] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

intercepted and broadcasted the Saturday, April 22, 2023 televised fight between Gervonta Davis and Ryan Garcia (hereinafter the "Program"). (Compl. at 4–7).

The following facts are undisputed. G & G had exclusive commercial distribution and piracy enforcement rights of the Program. (Gagliardi Aff. ¶ 3, ECF No. 43-4). Janice Murray is a managing member and owner of Curry Murray Whitlock, LLC, which owns and operates the commercial establishment Dimple's Restaurant & Lounge located at 9036 Liberty Road, Randallstown, Maryland 21133 ("Dimple's"). (Business Entity Search at 2, ECF No. 1-1; Janice Murray's Am. Answers to Interrog. at 1, ECF No. 43-5).

Defendants did not pay a commercial leasing fee to G & G to broadcast the Program. (Gagliardi Aff. ¶¶ 3, 7). On the night of the program, Jerrod Cottman, an investigator employed by G & G, entered Dimple's, where there were six to eight patrons, and observed the Program being displayed on one of the four televisions at the establishment for approximately thirteen minutes. (Cottman Aff. at 1, ECF No. 45-6). Cottman did not pay a cover fee to enter Dimple's and did not see any advertisement relating to the Program on Dimple's premises. (Cottman Dep. at 6:14–17-6, ECF No. 45-5). Janice Murray was not present at Dimple's on the night of the Program. (Murray Decl. at 1, ECF No. 45-2).

**B.    Procedural History**

G & G filed a Complaint in this Court against Defendants for violations of 47 U.S.C. § 605 (Count I) and § 553 (Count II) on October 23, 2023. (Compl. at 4–8). G & G seeks statutory damages as well as attorney's fees and costs. (Id. at 8–9). G & G brought this Motion for Partial Summary Judgment as to § 553 liability on February 3, 2025. (ECF No.

43). Defendants filed an Opposition on March 17, 2025, (ECF No. 45), and G & G filed a Reply on April 17, 2025, (ECF No. 46).

## II.  DISCUSSION

### A.  Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

3

or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Id. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

**B.   Analysis**

    **1.   Curry Murray Whitlock, LLC Liability**

G & G moves for summary judgment with respect to their claim that Curry Murray Whitlock, LLC ("the LLC") violated 47 U.S.C. § 553. (Mem. Supp. Mot. Summ. J. ["Mot."] at 5–15, ECF No. 43-3). The Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 prohibits the interception and receipt of certain communications. Both § 553 and § 605 are strict liability statutes, meaning that the intent and willfulness of

Defendants are not factors in establishing liability for violations. See J & J Sports Prods., Inc. v. Bromart, LLC,. DKC 15-0175, 2015 WL 8138091, at *2 (D.Md. Dec. 8, 2015). Section 605 prohibits the "unauthorized interception or receipt of certain 'radio' communications, including at least 'digital satellite television transmission,'" while § 553 prohibits the "unauthorized interception or receipt of certain cable communications.'" J & J Sports Prods., Inc. v. Intipuqueno, LLC, No. DKC-15-1325, 2016 WL 1752894, at *2 (D.Md. May 3, 2016) (citing J & J Sports Prods., Inc. v. Mayreal II, LLC, 849 F.Supp.2d 586, 588 n.3 (D.Md. 2012)).

In this case, G & G argues that § 553 applies because there is evidence Defendants used Verizon cable technology to intercept and receive the Program. (Mot. at 7–8). Section 553(a)(1) provides that: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

It is undisputed that the Program was purchased through a residential Showtime application, that Defendants used Verizon cable internet service at Dimple's, and that the Program appeared on a television at Dimple's. (See Whitloch Decl. ¶¶ 3, 5–6, ECF No. 45-3; Cottman Aff. at 1; Curry Murray's Am. Answers to Interrogs. at 8–9, ECF No. 43-5). Defendants claim that "[t]here is no evidence that Dimple's cable internet service was used to intercept or receive the Program," and they are not able to access the now "defunct" Showtime account to confirm G & G's allegations. (Mem. Opp'n Pl.'s Mot. Partial Summ. J. ["Opp'n"] at 6, ECF No. 45). Defendants also state that "[w]hen The Program was

5

inadvertently displayed at one of the many TVs at Dimple's, it was done so through a mobile phone application." (The LLC's Am. Answers to Interrogs. at 9). G & G argues that in order for the Program to appear on the Dimple's television, "there had to be a connection between that mobile phone and the television, and the only possible connection was through the Verizon cable internet." (Mot. at 7). "[N]either the record nor any of the cases addressing the interception of similar broadcasts indicate there is another way Defendant[s] could have received the broadcast other than through a cable or digital satellite feed." Bromart, LLC, 2015 WL 8138091, at *2. There is no evidence in the record that Defendants purchased the program through DirecTV or other digital television satellite. Accordingly, the Program must have been shown using a cable feed.

The uncontested facts indicate that Defendants violated § 553. G & G had the exclusive commercial distribution rights for the Program, and any commercial establishment was obligated to contract with G & G to broadcast the Program. (Gagliardi Aff. ¶¶ 3, 8). It is undisputed that Defendants did not contract with G & G, and it is undisputed that Defendants broadcast the Program, however briefly, in their commercial establishment. (See Whitlock Decl. ¶¶ 3, 5–6). Accordingly, Defendants must have intercepted and displayed the program unlawfully. Because 47 U.S.C. § 553 is a strict liability statute, Defendants awareness of the violation or intent to broadcast the Program are immaterial. J & J Sports Prods., Inc. v. Beer 4 U, Inc., No. TDC-18-2602, 2019 WL 5864499, at *3 (D.Md. Nov. 8, 2019).

Further, any private viewing exception does not apply. Section 605(b) provides an exception for "private viewing" if: (1) the programming involved is not encrypted; and

(2)(A) a marketing system is not established . . . . 47 U.S.C. § 605(b) (emphasis added). There is no such exception under § 553. Even if there were, the evidence establishes that the Program was encrypted, so the exception cannot apply. (Gargliardi Aff. ¶ 9). Additionally, the fact that Defendants may have lawfully purchased the program for residential viewing through Showtime does not insulate them from liability for intercepting, receiving, and displaying the program at Dimple's, a commercial establishment. See J & J Sports Prods. Inc. v. Rubio, No. CV-16-01111-PHX-JJT, 2017 WL 3234939, at *2 (D.Ariz. July 31, 2017) ("The fact that defendant may have somehow legally purchased a Sky Television subscription—a fact that is far from established—does not immunize them from liability for broadcasting the event to the Tacos El Grullo patrons without obtaining authorization from plaintiff, the exclusive licensee."); cf Joe Hand Promotions, Inc. v. Dock St. Enters., Inc., No. WMN-11-1973, 2012 WL 401080, at *1 (D.Md. Feb. 7, 2012) (finding that defendants could not rely authorization from a third party to defeat liability under a strict liability statute).

The undisputed facts show that the Defendant LLC violated § 553 by displaying the Program at Dimple's without G & G's authorization. Defendants do not identify any genuine material facts in dispute that preclude summary judgment. Accordingly, G & G is entitled to summary judgment against Curry Murray Whitlock, LLC as to § 553 liability.

    **2.    Individual Liability**

G & G also argues that they are entitled to summary judgment against Defendant Janice Murray in her individual capacity. (Mot. at 12–14). Defendants argue that Murray cannot be held individually liable because there is no evidence that she authorized the

display of the Program, and she was not present at Dimple's on the day of the Program. (Opp'n at 7–12). At bottom, the Court agrees with Defendants.

This Court typically employs the vicarious liability test to determine whether an individual officer or employee of a corporation is liable for violations of § 605 or § 553. "[T]o state a claim against an individual under the Cable Act, a complaint must allege facts showing that the individual had a right and ability to supervise the infringing activities, as well as a direct financial interest in such activities." J & J Sports Prods., Inc. v. King, No. ELH-14-953, 2014 WL 4269073, at *5 (D.Md. Aug. 27, 2014) (quoting Joe Hand Promotions, Inc. v. Md. Food & Ent., LLC, No. CCB-11-3272, 2012 WL 5879127, at *2 (D.Md. Nov. 19, 2012)).

Here, the first prong of the vicarious liability test is satisfied. The record shows that Murray is the owner of Curry Murray Whitlock LLC, the corporate owner of Dimple's. (Business Entity Search at 2; Janice Murray's Am. Answers to Interrog. at 1). It does not matter for purposes of this prong that Murray was not present at Dimple's the night of the Program. "[T]he fact that she did not witness the exhibition of the Fight or authorize its exhibition does not absolve her of liability because actual knowledge or supervision of the violation is not required for vicarious liability to attach." Beer 4 U, Inc., 2019 WL 5864499, at *5. Murray had the right and ability to supervise the activities at issue simply based on her role at the establishment. J&J Sports Prods., Inc. v. Sandoval & Sandoval, Inc., No. CBD-17-1392, 2018 WL 3727944, at *3 (D.Md. Aug. 3, 2018).

Turning to the second prong, the Court finds that genuine issues of material fact preclude summary judgment as to Murray. While some courts deem an individual's

ownership interest to be sufficient to establish a direct financial interest, other courts require plaintiffs to show that the individual defendant sought or received some financial benefit from displaying the program at issue. Compare Sandoval & Sandoval, Inc., 2018 WL 3727944, at *3 (finding individual liability where owners by virtue of their position were "directly in line to profit from the showing of the Program"), with Beer 4 U, Inc., 2019 WL 5864499, at *5 (looking to evidence beyond ownership and finding questions of fact as to whether owner received a direct financial benefit from the broadcast). The record here does not establish that Murray had a direct financial interest in the unlawful broadcast. Viewing the facts in the light most favorable to Defendants, the fight was inadvertently displayed by a non-employee, on one of five televisions in Dimple's, for around thirteen minutes, with no sound and broken captions. (Whitlock Decl. ¶¶ 3, 5–6; Cottman Aff. at 1). Only six to eight patrons were present during the display. (Id.). Defendants did not charge a cover to enter the establishment on the night of the Program, and there is no evidence Defendants advertised the showing of the Program. (Cottman Dep. at 6:14–17:6). Murray has asserted that she did not have knowledge of the display of the Program and only learned about it when this lawsuit was filed, and Defendants did not advertise the Program in any capacity nor receive any "pecuniary benefit" from the Program. (Murray Decl. at 1–2). "Under these circumstances, it is unclear whether there would have been any direct financial benefit to [Murray], much less to [Dimple's]." Beer 4 U, Inc., 2019 WL 5864499, at *5. Therefore, the Court will deny G & G's motion as to Murray individually.[2]

---

[2] The Court need not address Defendants' argument that G & G is entitled to only minimal damages because damages are not currently before the Court.

### III. CONCLUSION

For the foregoing reasons, the Court will grant G & G's Motion for Summary Judgment in part and deny it in part (ECF No. 43). A separate Order follows. Entered this 29th day of May, 2025.

/s/
George L. Russell, III
Chief United States District Judge